T.C. Memo. 2000-295

UNITED STATES TAX COURT

SOLOMON MAYER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23357-96.                    Filed September 20, 2000.

.

<u>Jerome Kamerman</u>, for petitioner.

<u>Monica E. Koch</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  For the years in issue, respondent determined
deficiencies in petitioner's Federal income taxes and additions
to tax as follows:

|  |  | Additions to Tax | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 |
| 1991 | $34,838 | $ 3,635 | $ 706 |
| 1993 | 75,020 | 11,650 | 1,819 |
| 1994 | 83,520 | 13,775 | 2,677 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the primary issues for decision are: (1) For 1991, whether $22,192 in interest income relating to a bank certificate of deposit should be charged to petitioner; (2) for 1994, the amount of gambling costs petitioner realized to offset petitioner's gambling income; and (3) whether petitioner is liable for additions to tax under sections 6651(a)(1) and 6654.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

When the petition was filed, petitioner resided in Brooklyn, New York.

During the years in issue, petitioner was an officer and shareholder of Delta Realty Development Corp. (Delta Realty).  In 1988, Delta Realty purchased a parcel of real estate located in Newark, New Jersey, with the intention to renovate the building located on the property.  In order to purchase the real estate, Delta Realty obtained a $2.5-million loan from Bank Leumi Trust Co. of New York (Bank Leumi).

Also in 1988, another loan from Bank Leumi was obtained apparently in the amount of $1.5 million.[1] The evidence does not establish whether Delta Realty or petitioner was the debtor on this loan. The proceeds from this loan were used to purchase a Bank Leumi certificate of deposit (Bank Leumi CD).

For 1988 and 1991, petitioner was issued by Bank Leumi Forms 1099-INT, Interest Income, indicating that petitioner received interest income due on the Bank Leumi CD. On the Form 1099-INT for 1991, it was indicated that petitioner received $22,192 in interest income on the Bank Leumi CD.

Prior to 1991, petitioner won a large cash prize in the New York State Lottery with respect to which petitioner during the years in issue received an annual payment of $101,500.

In January of 1994, petitioner traveled to Las Vegas, Nevada, and played the slot machines at Caesar's Palace Casino.

In 1994, petitioner was issued Forms 1099 from Caesar's Palace indicating that petitioner had winnings in 1994 of $162,000 from playing the Caesar's Palace slot machines. Petitioner did not maintain any financial records relating to his gambling winnings and costs.

For 1991, 1993, and 1994, petitioner failed to file Federal income tax returns.

---

[1] Petitioner claims the loan was for $4 million. However, a letter from the attorneys who represented Delta Realty suggests that the loan was in the amount of $1.5 million.

On audit, respondent prepared and filed Federal income tax returns for petitioner for 1991, 1993, and 1994.

Among other adjustments, for 1991 respondent charged petitioner with the $22,192 in interest income on the Bank Leumi CD. For 1994, respondent charged petitioner with the $162,000 in gambling winnings from Caesar's Palace and the $101,500 in lottery winnings. Due to lack of substantiation, respondent allowed petitioner no gambling costs. Respondent also did not allow petitioner an exemption for his wife for any of the years in dispute.

In early 1995, in conjunction with a criminal investigation of petitioner, the attorney general of New York was granted a subpoena and seized many of petitioner's business records. The indictment against petitioner was later dismissed. In 1998, the attorney general of New York returned to petitioner some of his business records.

## OPINION

For the years in issue, respondent's adjustments ordinarily carry with them a presumption of correctness. See Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). However, with regard to the $22,192 in interest income relating to the certificate of deposit, petitioner contends that under section 6201(d) the burden should be on respondent to prove that the interest income should be charged to petitioner.

Section 6201(d) provides that if a taxpayer, in a court proceeding, asserts a reasonable dispute with respect to income reported on an information return and has fully cooperated with respondent, then the burden of producing reasonable and probative information relating to the alleged income may shift to respondent. See <u>Hardy v. Commissioner</u>, 181 F.3d 1002 (9th Cir. 1999), affg. T.C. Memo. 1997-97; <u>Dennis v. Commissioner</u>, T.C. Memo. 1997-275. Section 6201(d) provides as follows:

SEC. 6201(d). Required reasonable verification of information returns.

In any court proceeding, if a taxpayer asserts a reasonable dispute with respect to any item of income reported on an information return filed with the Secretary under subpart B or C of part III of subchapter A of chapter 61 by a third party and the taxpayer has fully cooperated with the Secretary (including providing, within a reasonable period of time, access to and inspection of all witnesses, information, and documents within the control of the taxpayer as reasonably requested by the Secretary), the Secretary shall have the burden of producing reasonable and probative information concerning such deficiency in addition to such information return.

The evidence indicates that petitioner has not satisfied the cooperation requirement of section 6201(d). Petitioner failed to file his Federal income tax returns for the years in issue. Petitioner produced minimal records for respondent's representatives. Petitioner is not entitled to the benefits of section 6201(d).

Based on the evidence before us, we conclude that the $22,192 in interest income received on the Bank Leumi CD should be charged to petitioner. We note particularly petitioner's failure to provide any personal bank records that would substantiate that he did not receive this interest income and petitioner's failure to provide any bank records of Delta Realty that would substantiate petitioner's claim that Delta Realty received this interest income.

We are not persuaded that, in spite of the seizure of some of petitioner's records, petitioner could not have located and produced for the Court documentation that would have substantiated petitioner's claim that the $22,192 in interest income was not received by petitioner, if in fact that were true.

Section 165(d) allows a deduction for losses from wagering transactions to the extent of gains from such transactions. See sec. 1.165-10, Income Tax Regs. Section 6001 and the corresponding regulations require taxpayers to keep sufficient records to substantiate the amount of gross income, deductions, and credits claimed. See sec. 1.6001-1(a), Income Tax Regs.

Respondent has suggested that taxpayers who gamble regularly maintain diaries of gambling winnings and costs supplemented by verifiable documentation to comply with section 6001. See Rev. Proc. 77-29, 1977-2 C.B. 538. Respondent suggests that the documentation should contain information regarding the dates and

type of specific wagers, the names and addresses of the gambling establishments, names of witnesses, and the amounts won or lost. Generally, respondent considers verifiable documentation to consist of the following:  Forms W-2G (Certain Gambling Winnings), actual winnings slips given to taxpayers by casinos, wagering tickets, credit records, and bank withdrawal forms.

Where taxpayers fail to satisfy their burden of demonstrating the amount of their gambling costs and fail to provide documentation or other corroborating evidence, we may disallow claimed gambling costs.  See Zielonka v. Commissioner, T.C. Memo 1997-81; Klabacka v. Commissioner, T.C. Memo. 1987-77.

The following schedule reflects petitioner's and respondent's respective computations of petitioner's claimed net gambling winnings for 1994.

| Computations of Petitioner's 1994 Net Gambling Winnings | | |
|---|---|---|
| | Petitioner | Respondent |
| Gross winnings | $837,570 | $162,000 |
| Gambling costs | (898,050) | -0- |
| Lottery winnings | 101,500 | 101,500 |
| Net winnings | $ 41,020 | $263,500 |

At trial, petitioner submitted an unsigned letter from Caesar's Palace that indicated that for 1994 petitioner put an estimated $898,050 into slot machines and had estimated slot machine winnings of $837,570, for an estimated net gambling loss (just from slot machines and before taking into account lottery winnings) of $60,480.  The letter states:  "Please note the

tracking system used to arrive at estimated win or loss information provides estimates only and does not constitute an accurate accounting record. * * * This information should be used as a supplement to your own records or information." The Caesar's Palace letter we regard as highly suspect. It is unsigned. By its terms, it is only an estimate and is to be supplemented by petitioner's own records. We regard the letter as unreliable evidence and give it no weight.

Petitioner has presented no documentation of his gambling costs. Petitioner acknowledges that he maintained no records of his gambling activities. Petitioner has failed to satisfy his burden of proof, and, on the evidence before us, we allow petitioner no gambling costs for 1994.

Under section 151(b), a taxpayer who does not file a joint return with his or her spouse may not claim an exemption for the spouse unless the spouse for the year had no gross income and is a dependent of the taxpayer. See sec. 1.151-1(b), Income Tax Regs. Petitioner has presented insufficient evidence regarding his wife to qualify her as a dependent. We disallow petitioner's claim of his wife as an exemption.

Section 6651(a) provides for an addition to tax for failure to file timely Federal income tax returns unless there is reasonable cause for such failure. Section 6654(a) generally

imposes an addition to tax for failure to pay estimated income taxes.

For 1994 only, petitioner offers the excuse that the seizure of his business records in 1995 and the return of only some of those records by the attorney general of New York constitutes reasonable cause for petitioner's failure to file his 1994 Federal income tax return. We disagree. Petitioner had a pattern of not filing his income tax returns. We regard petitioner's argument that he would have filed for 1994 but for the seizure of his records as not credible.

We sustain respondent's determination of all of the additions to tax.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.